No. 82.—John Butt, trustee, &c. plaintiff in error, *vs.* Thomas Maddox, defendant.

[1.] Judgments on the foreclosure of mortgages, are not within the Act of 1823, which declares null and void all judgments upon which no execution has issued; or if issued, upon which execution no return has been made within seven years.

[2.] When mortgaged property is levied on under a judgment of foreclosure, and a claim interposed, the plaintiff in execution must prove title to the property in the defendant, at the date of the mortgage, or make out a *prima facie* case, by proof of possession in the mortgagor at that time, before the claimant is put upon an exhibition of his title.

[3.] It is error in the Court, although he may charge the law correctly, to instruct the Jury in reference to a state of facts not proven.

[4.] Where the property is claimed by a trustee: *Held*, that the mortgage deed and judgment of foreclosure, although the mortgage recites that the property is and has been, for some time, in the possession of the claimant in his natural character ; and although the mortgage deed is attested by the claimant, as a Magistrate, do not raise a *prima facie* presumption of right and title in the mortgagor, to the property.

Claim, in Warren Superior Court.    Tried before Judge SAYRE, April Term, 1849.

A mortgage *fi. fa.* in favor of Thomas Maddox, against Terry Oliver and Monclaiborne Andrews, was levied on a tract or lot of land to which John Butt, as trustee for his children, interposed his claim.

On the trial, it appeared that no entry, by the proper officer to execute and return, had been made on the mortgage *fi. fa.* within seven years from the date of its issue ; and the claimant contended it was therefore dormant, under the Act of 1823. The Court overruled the objection, and claimant excepted.

The original mortgage was given in evidence, to which *John Butt, J. P.* appeared to be a witness. No evidence was before the Jury, to show title or possession in the defendants in *fi. fa.* either at the time of the execution of the mortgage, or subsequent thereto.

Counsel for claimant requested the Court to charge the Jury, " That as the plaintiff in execution has not shown that the defendants in *fi. fa.* have been in possession of the property levied on, since the execution of the mortgage, and shown no title to the property levied on, in the defendants in *fi. fa.* they cannot find the property subject to the execution, but must find for the claimant." The Court declined so to charge, and claimant excepted.

The Court charged as follows : " The facts of the mortgage and judgment of foreclosure, create *prima facie* or presumptive evidence of right and title in the mortgagor, if there be no other person than the mortgagor or *his tenants* in possession, but if there be evidence, to satisfy you that some other person than the mortgagor or his tenants, were in possession at the date of the mortgage, this presumption of law does not arise ; and to render the property liable, it must appear that the party

claiming adversely to the plaintiff, was in possession of the land under the mortgagor, or was privy to the execution of the mortgage, and assenting to the act of the mortgagor, in conveying the property by the mortgage.   If the claimant was assenting, common justice requires that he should not now oppose the rights of the plaintiff."

Which charge was excepted to by claimant—

1st.  Because it was predicated upon a state of facts which did not exist in the case, and of which there was no evidence before the Jury.

2d.  In instructing the Jury that the mortgage and judgment of foreclosure created *prima facie* or presumptive evidence of title in the mortgagor, if there be no other person than the mortgagor or his tenants in possession.

3d.  In instructing the Jury, that when the mortgagor or his tenants, were not in possession at the date of the mortgage, in order to render the property liable, it must appear that the party claiming adversely, was privy to the execution of the mortgage, or assenting to the act of the mortgagor, in conveying the property by the mortgage, &c. when there was no evidence of any such facts before the Jury.

On these several exceptions, error is assigned.

Toombs and Cone, for plaintiff in error.

W. C. Dawson, for defendant in error.

*By the Court.*—Nisbet, J. delivering the opinion.

[1.]  The first question made in this record, is, whether the judgment, being a judgment founded on the foreclosure of a mortgage, is subject to the provisions of the Act of 1823, which declares that all judgments thereafter to be rendered in any of the Courts of this State, on which no execution shall be sued out; or upon which execution, if sued out, no return shall be made by the proper officer for executing and returning the same, within seven years from the date of such judgment, shall be void and of no effect; it depends mainly upon the construction of the Acts of 1823 and of 1822; upon the construction of the Act of 1822, as well as that of 1823, because they are *in pari materia*.   The Act

of 1823 is an Act, by its title, to amend the 3d section of the Act of 1822. It amends that Act, by repealing the 3d section, and re-enacting it with a *proviso.* The 3d section, thus repealed, contained precisely the provisions of the Act of 1823, above recited, without the proviso. The proviso contains the amendment, and is to the effect, that plaintiffs in the judgments declared null and void, may renew them after seven years, in cases where, by law, they would be entitled so to do; and that the liens of such revived judgments shall take effect only from the revival. *Therefore,* the two Acts of 1822 and 1823, are clearly *in pari materia*—they relate, so far as the question now under review is concerned, to the same subject matter. As the Act of 1823 contains only the one enactment, as above stated, with the proviso added; and as that enactment was in the Act of 1822, we may limit our consideration to the Act of 1822, as it originally stood, with the proviso to the Act of 1823 added to the 3d section of that Act. This will simplify the work of construction. Are, then, *judgments on foreclosure of mortgages* within its operation? It is conceded that they are within its letter, because, in terms, it embraces "*all judgments* that may hereafter be rendered in any of the Courts of this State." But we believe that judgments on foreclosure of mortgages, are not within the mischief intended to be remedied by the Act of 1822; and that the judgments contemplated by it, are such only as have, by law, the force and effect of a lien; and that *all judgments,* in the language of the Act, means *all* of that class. Judgments of foreclosure have not, by law, a lien; they, and executions founded on them, are but the instruments by which the *amount* of the mortgage debt is ascertained, and by which the mortgaged property is brought to sale. They have not, by law, the element of lien; and as such, in the light of the mischief to be remedied by the Act of 1822, are harmless. Is it true that they have not? This is scarcely a questionable proposition. By Statute in Georgia, generally, judgments take lien upon all the property of the defendant, from their dates. A debt by promissory note, creates no lien; but when judgment is rendered thereon, the judgment is a lien from its date. This lien is a vital element of the judgment which did not belong to the contract; it began with its date, and ran with it, though time indefinite. Now, to limit the range of this lien, to certain intents and purposes, and because of certain mischiefs growing out of it, the

Legislature passed the Acts of 1822 and '3.   But different, altogether, is the nature of a judgment on the foreclosure of a mortgage.   To know the nature of that, let us look, first, into the legal character of a mortgage.   Both at Law and in Equity, in this State, it is a security for a debt; it is created by contract; it is the act of the parties.

The property mortgaged is in the nature of a pledge, upon which a lien attaches in favor of the mortgagee; which lien is discharged by the payment of the debt secured.   If the mortgagor fails to pay according to the conditions of his contract, then, the law provides the means of enforcing payment, by a judgment against the property, and a sale by execution, issued upon it.

This is done by petition to the Superior Court, in case of mortgages upon land, acting as a Court of Law, in lieu of a proceeding in Equity, as in England.   Discarding, for the purposes of this opinion, any enlarged view of the extensive subject of mortgages, this is presented as the simple and truthful view of a mortgage.   *Cholmondely vs. Clinton,* 2 *Jac. & Walk.* 1 *to* 189.   *Story's Equity Juris.* §1015.   1 *Kelly,* 193, '4.

It is in the nature of a contract, by which a lien is created upon property, to secure the payment of a debt, with interest and costs.   The lien is part and parcel of the contract; it grows out of the act of the parties, and exists as well anterior as subsequent to the judgment of foreclosure ; and, as a general rule, that mortgage which is first in point of time, is first in point of right.   Such being the character of a mortgage, we inquire what is the character which belongs to a judgment of foreclosure ?   The Judiciary Act of 1799, (*Prince,* 423,) provides, upon the due publication or service of a rule of foreclosure, that the Court shall " give judgment for the amount which may be due on the mortgage, and order the property mortgaged to be sold in such manner as is prescribed in cases of execution."   The mortgagor is entitled to come in and contest the amount claimed to be due ; and in *that event,* auditors are appointed to liquidate the accounts between the parties, and either party is entitled to a new trial; *and in that event,* the trial is as in cases of appeal in other cases. In cases of mortgages on personal property, the mortgagee makes affidavit of the principal and interest due on the mortgage which is annexed to it ; and thereupon, execution issues as on a judgment, &c.   *Prince,* 424.   In both cases, the duty of the Court is

to ascertain the amount due on the mortgage, and to order the sale of the property. The judgment is an ascertainment of the amount due, upon which the process issues for the sale of the property ; that judgment is clothed with no lien ; it is the means by which the lien created by the mortgage, is fixed upon the property for the debt due ; and it is the basis of a process by which that lien is enforced ; that is its legal character. The lien is ascertained by reference to the mortgage ; it is anterior to the judgment ; it takes date from the date of mortgage. And although to some intents, the mortgage may be considered as merged in the judgment, yet, for the purposes of the lien it is still vital. It is manifest, therefore, that a judgment of foreclosure differs from a general judgment in this essential particular ; that no lien attaches to it. This being the case, it is not within the mischief intended to be remedied by the Act of 1823. The mischief which that Act was intended to remedy, grew out of the lien of judgments. The objects of the Act of 1823, are declared in the title and preamble of the Act of 1822, of which, as we have seen, it is amendatory. The title is "an Act to amend the 26th section of the Judiciary Act, passed 16th day of December, 1799 ; and also, to prevent a fraudulent enforcement of dormant judgments." The preamble, after reciting that a contrariety of decisions had taken place in the different circuits of the State, as to the time when the property of the person against whom a judgment is entered, is bound, proceeds to declare : "And dormant judgments, by being collusively kept open, are made the instruments of fraud on innocent purchasers, and often operate oppressively on vigilant and *bona fide* creditors. Be it enacted, &c." From both of which, it is clear that the mischief of the Act of 1799 was this, to-wit : judgments, by that Act, having a lien from their date, which bound all the property of the defendant, then by him owned, or subsequently acquired, and which overrode the title of innocent purchasers, and also the lien of younger judgments, *were collusively kept open.* The mischief was, that these judgments were fraudulently kept open when paid ; their lien continuing through · an indefinite time. The object of the law was, to protect the rights of innocent purchasers and vigilant *bona fide* creditors. · (See a case giving this construction to the Acts of 1822 and '3, determined at Gainesville in September last, and not yet repored. 7 *Ga. R.*) Accordingly, in pursuit of this object, the 3d section of the Act

of 1822, and the Act of 1823, make null and void all judgments upon which no execution has issued within seven years; or if execution has issued, upon which execution no return shall be made within seven years, yet, with the right reserved in the plaintiff to renew, with a lien in the revived judgment, commencing at the time of the revival. This was the remedy. The construction which this Court has given to this Act, is, that such judgments are not void for all purposes; their lien is annulled, and also their capacity to enforce a sale; but they are valid, as the evidence of a debt which will support an action, and may be revived by *scire facias.* If these things are so, how can it be said that judgments on mortgages, which have no lien, are within the mischiefs to be remedied by these Statutes?

Again, these Statutes, being amendatory of the 26th section of the Judiciary Act of 1799, and their provisions having reference to judgments, they are clearly to be considered as relating *alone* to *the judgments* which are embraced in that section. And what kind of judgments are they? Not judgments on mortgages, for this conclusive reason, to-wit: the Act of 1799 relates to judgments which bind *all* the property of the defendant, from their date. The Act of 1799, speaking of judgments, enacts that " all the property of the party against whom such judgment shall be entered, shall be bound from the signing of the first judgment." The Legislature did not intend to embrace judgments on mortgages, in the 26th section of the Act of 1799; it has never been so held by any Court in Georgia. They did not intend to interfere with the law of mortgages—to enlarge their *specific* lien into a *general* lien. Neither, therefore, the old law, under which the mischief originated, nor the new laws, which prescribe the remedy, contemplated judgments upon foreclosure of mortgages.

All the answer that can be made to this clear reasoning is, that the letter of the Act of 1823 embraces them. That Act speaks of *all judgments. All,* as we have presented this subject, is susceptible of a very rational and legitimate generality of construction, judgments on mortgages being excluded. If they are embraced, then we are driven to hold, that when speaking of *judgments,* the Legislature mean *mortgages*—two things essentially different. If like mischiefs grow *out of* mortgages, it is competent for the Legislature to prescribe a like or other remedy—it is

not competent for this Court to do it.    Upon this assignment, we think the ruling of the Court below was according to law.

The instructions asked by the plaintiff in error, ought to have been given.    This being a claim, the only evidence before the Jury was the mortgage deed from the defendant in execution to the plaintiff, and the mortgage *fi. fa.* with the Sheriff's entry of the levy.    The property is described in the mortgage as property now, and for some time past, in the possession of *John Butt*, and *John Butt, J. P.* is one of the subscribing witnesses to the mortgage, and the claim was put in by *John Butt, trustee for his children.*    When the cause went to the Jury, the Court was requested to charge them, " That as the plaintiff in execution has not shown that the defendants in *fi. fa.* have been in possession of the property levied on, since the execution of the mortgage, and have shown no title to the property levied on, in the defendants in *fi. fa.* they cannot find the property subject to the execution, but must find for the claimant."    The Court declined thus to charge the Jury, but instructed them as follows : " The facts of the mortgage and judgment of foreclosure, create *prima facie*, presumptive evidence of right and title in the mortgagor, if there be no other person but the mortgagor or his tenants in possession ; but if there be evidence to satisfy you that some other person than the mortgagor or his tenants was in possession at the date of the mortgage, this presumption of law does not arise, and to render the property liable, it must appear that the party claiming adversely to the plaintiff, was in possession of the land under the mortgagor, or was privy to the execution of the mortgage, and assenting to the act of the mortgagor, in conveying the property by the mortgage.    If the plaintiff was assenting, common justice requires that he should not now oppose the rights of the plaintiff."

[2.] The question to be tried on a claim is, whether the property be liable to the judgment, as the property of the defendant in the judgment?    The issue is between the claimant and the plaintiff in execution, as to the ownership of the property.    It is incumbent on the plaintiff in execution, in the first instance, to make out a *prima facie* case of property in the defendant in execution.    When this is done, the *onus* is shifted, and the claimant is put upon an exhibition of his title.    If the plaintiff in execution shows title in the defendant, that of course will change the burthen of proof.    He is not, however, compelled to do this.    He

Butt *vs.* Maddox.

may make out a *prima facie* case, when the execution levied is founded on a general judgment, by proving possession in the defendant, or his tenants, at the time the judgment was rendered or subsequent thereto.    If he shows neither, he must fail.    In case of a judgment on mortgage, I apprehend, he must show title or possession in the mortgagor at the date of the mortgage ; because the mortgage lien is specific, attaching only on the property mortgaged, by virtue of the mortgage contract.    To create this lien, the mortgagor must own the property when the mortgage is executed.    Subsequently acquired title will not relate back to the date of the mortgage, and create a lien which the mortgage itself does not create..    For example, mortgaged property, to which title is acquired subsequent to the execution of the mortgage, would be liable to a general judgment against the mortgagor, to the exclusion of the mortgage, although such general judgment be younger than the mortgage.    Now, in accordance with these principles, are nearly all the propositions laid down by the Court. For example, it is true that the facts of a mortgage and judgment of foreclosure, if there be no other person than the mortgagor or his tenants in possession at the date of the mortgage ; that is, if he or his tenants be there in possession, will create "*prima facie,* presumptive evidence of right or title in him."

It is also true, as stated by the Court, that if another person be in.possession at the date of the mortgage, this presumption of law does not arise.    It is farther true, that if the third person in possession be privy and assenting to the execution of the mortgage, and to the conveyance of the property, he will be estopped from setting up a claim adverse to the title of the mortgagee.

[3.] All these propositions are abstractly true, but are practically wrong in this case, because they are hypothetical.    There was no evidence adduced, which either required or authorized the submission of them to the Jury.    They might, no doubt did, mislead the Jury.    It was, therefore, according to a well-settled rule, error to instruct them upon these points.    There was, in this case, no legal evidence of title or possession in the defendant in execution, nor was there any legal evidence that the claimant was privy and consenting to the execution of the mortgage, and if so, the instructions asked by the plaintiff in error, were the only instructions proper to the case.    The mortgage proved that the defendant had, in fact, mortgaged certain property

to the plaintiff, but it did not prove or raise the presumption, in law, that he owned that property. It would be ruinous to hold, that the fact that one has taken upon himself, right or wrong, to convey the property of another, was *prima facie* evidence of right or title to that property. The judgment demonstrates that the mortgagor owed the mortgagee, upon the mortgage debt, so much money; but it does not demonstrate that the defendant owned the property, and the execution is but the process of the Court, proving the authority of the Sheriff to make the levy; but the issue lies before all these. The question is, was the defendant *owner of the property* at the date of the mortgage? Had he, by right or title, power to give to the mortgagee a lien upon it?

[4.] Much stress was laid in the argument upon two things, to wit: that by recitals in the mortgage, the property was in possession of Butt, the claimant, and that he, Butt, witnessed the mortgage as a Magistrate. From these two facts it was insisted, that there was evidence before the Jury that he, Butt, admitted himself the tenant of the mortgagor, attorned to him, and thus the possession of the mortgagor was proven; or that the attestation of the deed was an assent to the right and title of the mortgagor, and thus the claimant was estopped from claiming adversely to the plaintiff in execution. The recital that Butt was in possession, taken singly, is against the plaintiff, for it proves possession out of the defendant. Coupled with the attestation, by Butt, of the mortgage deed, what does it prove? It does not follow, that because one witnesses a deed, that he knows its contents—it may or it may not be read to or by the witness. He is called to attest the execution, the signing, sealing and delivery, and no more. If the identity of the witness with the claimant was established, I should be inclined to hold, that the presumption would be, that he knew the contents of the deed, and not dissenting, at the time, to the conveyance of the property, the inference might be drawn that he was not the owner, and that the grantor was, and that his possession was under the grantor. Here, there was no evidence of identity. Whether *John Butt, J. P.* who witnessed the mortgage, was the same with *John Butt*, claimant, is not proven or attempted to be proven; but the fact is, that if they are the same natural persons, they are different in the law; for *John Butt* does not claim in his own right, but in *autre droit*, as *trustee for his chil-*

*dren.* His attestation, in his character as a Justice of the Peace, cannot, on this issue, affect the rights of his *cestui que trusts.*

Let the judgment of the Court below be reversed on the last assignment.