## MORRIS v. WINKLES.

| 88 | 717 |
|----|-----|
| 100 | 656 |
| 88 | 717 |
| 104 | 146 |
| 88 | 717 |
| 107 | 284 |
| 88 | 717 |
| 115 | 678 |
| 88 | 717 |
| 117 | 213 |
| 117 | 751 |

To make a *prima facie* case against the claimant in favor of the plaintiff in mortgage *fi. fa.*, it is not sufficient to prove possession of the mortgaged property by the mortgagor at the time of the levy, but either possession or title in the mortgagor at the date of the mortgage must be shown.

2. Unless the claimant holds under the mortgagor directly or indirectly, the judgment of foreclosure, regular and valid in all respects, is not open to attack at her instance on the ground that the mortgage foreclosed was not in fact the one that was executed.

February 1, 1892.

Claim. Mortgage. *Onus.* Judgment. Before Judge JANES. Haralson superior court. January adjourned term, 1891.

A mortgage *fi. fa.* in favor of Winkles against Reuben Morris was levied on the land mortgaged, and a claim was interposed by Serena Morris, his wife. The property was found subject; claimant's motion for new trial was overruled, and she excepted. The grounds of the motion were, that the verdict was contrary to law, evidence, etc.; that the court erred in refusing to allow claimant to show that the mortgage introduced by plaintiff in *fi. fa.* was not made by defendant, the claimant having in court

witnesses to prove this fact and asking leave of the court to examine said witnesses, which was refused.

The plaintiff put in evidence the tax digests for 1884 and 1885, showing that the lot of land in question was returned for tax by defendant in *fi. fa.*; and the mortgage *fi. fa.*, and the mortgage dated February 13, 1885, which defendant signed by his mark; and evidence that defendant in *fi. fa.* and claimant lived together on the lot on September 30, 1886, the date of the levy. Also, evidence that defendant came to plaintiff's store about February 8, 1885, and made arrangements with him to buy goods on time, promising a mortgage to secure him; that defendant then told him to let claimant and Mary Pollard have $20 worth of goods; that about February 10, 1885, claimant and Mary came to the store and bought $20 worth of goods, at which time claimant told plaintiff that defendant told her he had made arrangements with plaintiff for her to trade with him at his store and was going to give a mortgage on the lot, and that they, claimant and Mary, could trade out with plaintiff $20 worth, at which time they bought about $16 worth, and afterwards $10 worth more.

For claimant the defendant testified that he made an arrangement to trade with plaintiff, and told him to let his wife and Mary Pollard have $20 worth of goods, but never told claimant that he had given or was to give any mortgage to plaintiff. Claimant testified that she and Mary traded at plaintiff's store some on her husband's account, but never told plaintiff that her husband had told her he had given or was to give a mortgage to plaintiff; that she never knew anything about any mortgage until July or August, when her husband came home one day with his shirt torn off, and told her that he had had a racket with plaintiff and that plaintiff had beat him and tore his shirt because he would not sign a mortgage or paper. Here claimant proposed to prove

by one Lee and others that they were present when defendant made a mortgage to plaintiff in the early part of 1885, and that the mortgage was a written one and not a printed form as the one introduced in evidence was; that defendant wrote and signed his name to the same, and that he could and did write. This evidence was rejected.

I. F. THOMPSON and W. P. ROBINSON, for plaintiff in error.

J. M. McBRIDE, contra.

BLECKLEY, Chief Justice.

1. By statute ordinary judgments have a lien from their date upon all property, real and personal, of the defendant, then owned or afterwards acquired. Where a levy is made under a judgment of that class, it suffices, therefore, to prove possession in the defendant at the time of the levy, or at any time subsequent to the rendition of the judgment, as a basis for presuming title to the property and attachment of the judgment lien upon it. But the rule does not apply to mortgage executions. The lien is lodged in the mortgage, and not in the levy, execution or judgment of foreclosure. *Richards v. Myers*, 63 *Ga.* 762. In order for the lien of the mortgage to attach upon the property, title must have been in the mortgagor when the mortgage was executed, or he must have had possession then so as to raise the presumption of title. *Butt v. Maddox*, 7 *Ga.* 495; *Gunn v. Jones*, 67 *Ga.* 398. It is not sufficient to prove possession in the mortgagor at the time of the levy. Nor would evidence that he returned the property for taxation in the year the mortgage was executed and in the preceding year, amount to anything more than mere declarations of ownership by him. *Smith v. Haire*, 58 *Ga.* 446. To render his bare declarations of any value against the claimant, they would have to be made whilst

he was in possession. Unless possession appeared in
*Ivey* v. *Colquitt*, 63 *Ga.* 509, that case, in holding the
tax returns admissible, is of doubtful correctness. But
there was other evidence to support the verdict. So
says the opinion. In this present case, there was no
evidence whatever of any possession prior to the date
of the levy. That date was September the 30th, 1886,
long after the tax returns were made. The additional
evidence relied upon to make out a *prima facie* case for
the plaintiff was an alleged admission by the claimant
(she being the mortgagor's wife) that her husband had
told her he had made arrangements with the plaintiff
for her to trade with the plaintiff at his store, and was
going to give a mortgage on the land now in contro-
versy, telling her further that she and another person
could trade with the plaintiff to the extent of $20.00
worth. To this admission was added the fact that she
and the person named actually bought at that time
about $16.00 worth of goods, and afterwards, $10.00
worth more. She testified that she never made the
admission, and her husband testified that he never told
her that he was going to give any mortgage to the
plaintiff. The dealing of the plaintiff with the hus-
band was on his account and not on the wife's account.
It does not appear what kind of goods the wife pur-
chased, or that the price of them was covered by the
mortgage. Certainly the mortgage was not given for
them alone, for their price, at the most, was about
$26.00, whereas the principal of the mortgage *fi. fa.* is
$60.00. We see no ground for estopping the wife by
her admission, even if she made it; and unless it was
allowed to have the force of an equitable estoppel, it
would be no substitute for proof of title or possession
in the mortgagor at the date of the mortgage. There
is no rule of evidence which would render a mere oral
admission of the claimant sufficient, in a claim case,

to establish title to land in the defendant, whether a debtor by ordinary judgment or by a mortgage foreclosed. Under our law, the wife could not validly consent to the mortgaging of her property for her husband's debt; and here it does not appear that the land was mortgaged for her own debt, or even that any debt as to her was created. The goods she obtained may have been such as the husband was bound to supply. As he made arrangements for their purchase, the presumption is that they were sold on his credit, and there is no evidence to the contrary. It is true that the wife stood at the trial on her claim alone, and did not show, nor attempt to show, title in herself; but she was a statutory claimant, and the burden of making a *prima facie* case was upon the plaintiff. The very question is, whether such a case was made; for until that was done, she could not be called upon to exhibit her title. We think the plaintiff stopped short of enough to change the *onus*.

2. The rejection of the evidence offered by the claimant to prove that another mortgage was executed, and inferentially that the one foreclosed was not executed, was proper. It does not appear that the witnesses sought to be examined were the subscribing witnesses to any mortgage whatever. Proof merely that another mortgage was executed would not put any direct negative upon the execution of the mortgage which was foreclosed. But even if such would be its effect, the claimant had no right to attack the judgment of foreclosure, she, so far as appears, not claiming title under the mortgagor. That judgment adjudicates the fact that the mortgage foreclosed was executed. If the mortgagor was bound by the judgment (and he certainly was), it ought to prevail against the claimant as well as against him, if the land belonged to him at the date of this mortgage, and if since that time he has

v 88-46

not conveyed it, or any interest in it, to the claimant. All the cases heretofore decided will harmonize with this position. Claimants may attack foreclosed mortgages which would encumber or impair their title, as derived from or through the mortgagor, but not such mortgages as merely compete with title derived from another source. They must disclose their privity with him before they can complain that he had a defence which he failed to set up.

The court erred in not granting a new trial upon the general grounds in the motion.    *Judgment reversed.*